Joseph PESCE, Plaintiff,

v.

SKIPS A/S HERSTEIN, Defendant and Third-Party Plaintiff,

v.

MARRA BROS., INC., Third-Party Defendant.

No. 67 Civ. 2197.

United States District Court, S. D. New York.

Feb. 24, 1971.

Sergi & Fetell, Brooklyn, N. Y., for plaintiff.

David P. H. Watson, Haight, Gardner, Poor & Havens, New York City, for defendant and third-party plaintiff.

Martin M. Baxter, Alexander, Ash, Schwartz & Cohen, New York City, for third-party defendant.

OPINION

SOLOMON, District Judge:

Joseph Pesce, a longshoreman, was injured during the unloading of the M/S Black Tern when he caught his right foot between dunnage boards while carrying cartons to a palate.

Four men, including Pesce, were working in the starboard wing of the No. 2 'tween deck, unloading cartons

which were stacked approximately six feet high. Each man was working in a space he had made for himself by unloading toward the starboard side. Each was carrying boxes from his space, over dunnage laid on the floor, to the palate in the square of the hatch.

On one of these trips, during the early stages of unloading, Pesce caught his right foot between dunnage, fell, and injured his ankle.

The No. 2 hatch is considerably wider than it is long, and the top layer of dunnage upon which the cartons were resting was laid athwartships. As a result, the longshoremen were unable to remove the dunnage strips as the work progressed.

At the conclusion of the trial, I held that this arrangement violated Section 9.91(d) of the Safety and Health Regulations for Longshoring and created the unseaworthy condition which proximately caused plaintiff's injury. I later held that plaintiff is entitled to recover a total of $10,907.06 against the defendant (shipowner).

The remaining issue is whether the shipowner is entitled to indemnity against the stevedore, the third-party defendant.

The shipowner contends that when the stevedore saw this unseaworthy condition, it should have halted its stevedoring operations. This failure, the shipowner asserts, constituted a breach of the stevedore's warranty of workmanlike performance, which made the stevedore liable to the shipowner as an indemnitor.

The Court, in Judith Ann Liberian Transport Corp. v. Crawford, 399 F.2d 924 (9th Cir. 1968), was confronted with a similar problem. In the following excerpt from the opinion, Judge Merrill clearly and succinctly set forth the principles of law which govern this case:

"The question remains whether proceeding to unload in the face of a known hazard constitutes a lack of workmanlike performance. Many cases lay down the rule that once a defec-

tive or unseaworthy condition is discovered the stevedore must discontinue work until the condition is remedied. These cases, however, appear to deal either with conditions that could be remedied or with a lack of workmanlike performance in the effort to avoid or remedy the condition.[1]

"1. Conditions that could be remedied were present in Crescent Wharf & Warehouse v. Compania Naviera de Baja California, 366 F.2d 714 (9th Cir. 1966); Matson Terminals, Inc. v. Caldwell, 354 F.2d 681 (9th Cir. 1965); Metropolitan Stevedore Co. v. Dampskisaktieselskabet Int'l, 274 F.2d 875 (9th Cir.), cert. denied, 363 U.S. 803, 80 S.Ct. 1237, 4 L.Ed.2d 1147 (1960). Negligence was admitted by the stevedore in Rederi A/B Nordstjernan v. Crescent Wharf & Warehouse Co., 372 F.2d 674 (9th Cir. 1967).

"[3] Here the hazard presented by the unsafe stow could not be remedied. Unless the cargo was permanently to be left in the ship, the alternatives faced by this (or any other) stevedore were to leave it for the ship's crew to unload or to unload it in the face of the hazard, taking all due precautions. The first alternative we must reject. The special rules governing shipowner liability and indemnification 'are designed to minimize the hazards encountered by seamen * * * and to minimize the likelihood of such accidents.' Italia Societa per Azioni di Navigazione v. Oregon Stevedoring Co., 376 U.S. 315, 324, 84 S.Ct. 748, 754, 11 L.Ed.2d 732 (1964). Stevedores are the acknowledged experts in this field. It would hardly serve to minimize accidents to require that they be replaced by inexperienced crew members in all cases where the circumstances are known to be irremediably hazardous.

"[4] The question, then, is whether the stevedore in workmanlike fashion attacked the problem presented by the known unseaworthy condition. * * *" 399 F.2d at 926.

I find that the stevedore did proceed in a workmanlike manner.

**556**

Working in passages towards the wall was the reasonable solution to the problem. Once the passages had reached the starboard side, the stevedore would have been able to remove athwartships dunnage as the work progressed fore and aft. Pesce's accident occurred before unloading reached the starboard side and while dunnage was exposed and not removable.

There is no merit to the shipowner's contention that the stevedore should have laid walking boards on the dunnage. Because the dunnage was laid athwartships, as the unloading progressed the length of the exposed dunnage was constantly being increased. This, together with the condition of the dunnage, would have made the use of walking boards impractical and probably more dangerous.

Plaintiff is entitled to a judgment of $10,907.06 against the shipowner, and the shipowner's claim for indemnity against third-party defendant is dismissed.

This opinion shall serve as findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a).