Warren PASSMAN

v.

COMPANHIA de NAVEGACAO MARITI-
MA NETUMAR and Northern Shipping
Company and Midland Insurance Com-
pany.

Civ. A. No. 81–1120.

United States District Court,
E. D. Pennsylvania.

July 9, 1982.

Charles Sovel, Freedman & Lorry, Philadelphia, Pa., for plaintiff.

Thomas S. Brown, Hecker, Maginnis, Rainer & Brown, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

DITTER, District Judge.

In this action brought pursuant to the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 *et seq.* (LHWCA or "the act"), plaintiff seeks a declaratory judgment that his employer and his employer's workmen's compensation carrier are real parties in interest in a negligence claim he has brought against the owner of a ship upon which he was injured. Because such a holding is not warranted under Fed.R.Civ.P. 17(a), and would directly contravene the delicate balancing of interests embodied in the LHWCA, I must refuse plaintiff's request.

Plaintiff was employed as a longshoreman by the Northern Shipping Company ("Northern"). He was injured while working aboard the M. V. AMALIA, a vessel

owned and operated by Companhia de Navegacao Maritima Netumar ("Companhia"). Plaintiff's medical expenses were paid by Northern and he received temporary total disability benefits from Midland Insurance Company ("Midland"), Northern's workmen's compensation carrier. Both Northern and Midland have asserted compensation liens against any recovery obtained by plaintiff from Companhia or any other party.

Plaintiff commenced this action against Companhia, Northern, and Midland. Count I of the complaint is directed solely against Companhia and asserts that plaintiff's injuries were caused by the shipowner's negligence. Count II seeks a declaratory judgment that to the extent of their respective compensation liens, Northern and Midland are real parties in interest in the action against Companhia and should be required to join the lawsuit as involuntary plaintiffs or, alternatively, that plaintiff should be permitted to pursue his claim against Companhia only for those damages in excess of the compensation liens. Northern and Midland have filed a motion to dismiss contending, *inter alia*,[1] that under the comprehensive statutory scheme established by the LHWCA they are not real parties in interest in plaintiff's negligence action and therefore cannot be added as involuntary plaintiffs.

In order properly to address plaintiff's contentions, it is necessary to examine in some detail the manner in which the LHWCA controls the conflicting interests of longshoremen, shipowners, and stevedores. Under 33 U.S.C. § 904, a stevedore is required to pay compensation to an injured longshoreman irrespective of fault. This obligation represents the stevedore's exclusive liability under the act, 33 U.S.C. § 905(a). A longshoreman is not required to elect between receiving compensation from his employer and commencing a negligence action against a third party, 33 U.S.C. § 933(a).[2] From the time he receives a

---

1. Northern and Midland also advance several jurisdictional arguments, none of which have merit. They first contend that plaintiff cannot maintain this action because a stevedore's exclusive liability under the LHWCA is its obligation to make compensation payments to injured employees. *See* 33 U.S.C. § 905(a). This argument confuses two very different issues. Clearly, plaintiff could not bring an action for damages against either Northern or Midland because they are not subject to such liability under the Act. However, that is not plaintiff's claim. Rather, he seeks a declaratory judgment which involves a construction of the LHWCA. Thus, "plaintiff's complaint discloses a need to interpret a federal law." *Verlinden B. V. v. Central Bank of Nigeria*, 647 F.2d 320, 326 (2d Cir. 1981), *cert. granted*, —— U.S. ——, 102 S.Ct. 997, 71 L.Ed.2d 291 (1982), and jurisdiction is properly predicated upon 28 U.S.C. § 1331. *See Exxon Corp. v. Hunt*, 683 F.2d 69, 72 (3d Cir. 1982) (action arises under federal law when complaint "requires the construction of a federal statute"). Second, defendants argue that declaratory relief is inappropriate because the LHWCA provides a comprehensive statutory scheme to reconcile the rights of the parties. While this consideration implicates the merits of plaintiff's action, it does not bear upon this court's jurisdiction to adjudicate the dispute because it is the interpretation of this "comprehensive legislative scheme" which is at issue. Finally, Northern and Midland assert that there is no "actual controversy" as required by the Declaratory Judgments Act, 28 U.S.C. § 2201, since both they and plaintiff have a common interest in recovering against Companhia. Again, this confuses plaintiff's negligence action with his request for declaratory relief. In order for a federal court to adjudicate a request for a declaratory judgment, "[t]he controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests." *ACandS, Inc. v. Aetna Casualty and Surety Co.*, 666 F.2d 819, 822 (3d Cir. 1981), *quoting Aetna Life Insurance Co. v. Haworth*, 300 U.S. 227, 240–41, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937). While Northern, Midland, and plaintiff are in accord as to the desirability of a recovery against Companhia, there is a very real dispute over who should bear the burden of obtaining that recovery. It is this dispute which is the predicate for the declaratory judgment action.

2. Prior to 1959, the longshoreman was required to elect between receiving compensation from his employer and pursuing a third-party action against the shipowner. Believing that this choice "work[ed] a hardship on an employee by in effect forcing him to take compensation under the act because of the risks involved in pursuing a lawsuit against a third party" S.Rep.No.428, 86th Cong., 1st Sess. 2, *reprinted in* [1959] U.S.Code Cong. & Ad.News 2134, Congress amended the act to give the longshoreman the option of accepting compensation and also commencing a third-party action

compensation award, a longshoreman has six months to institute a personal injury action against a third-party tortfeasor, which is normally the shipowner. 33 U.S.C. § 933(b). If the longshoreman does not begin such an action within the required six-month period, his acceptance of the compensation award acts as an assignment to the stevedore of his right to recover damages from a third party. *Id.* If the stevedore pursues the assigned cause of action, it is entitled to retain the amount of compensation and benefits it has actually paid as well as expenses incurred in obtaining the recovery. Any excess recovery is apportioned between stevedore and longshoreman, the longshoreman receiving 80 per cent and the stevedore 20 per cent. 33 U.S.C. § 933(e). The passage of the six-month period serves as a complete bar to the longshoreman's right to bring an independent action regardless of whether the stevedore, as assignee, pursues the claim. *Rodriguez v. Compass Shipping Co., Ltd.*, 451 U.S. 596, 101 S.Ct. 1945, 68 L.Ed.2d 472 (1981).

■ However, even when the longshoreman does timely commence a third-party-negligence action, the stevedore may assert a judicially created lien in the full amount of its compensation payments against any recovery.[3] *Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256, 269–70, 99 S.Ct. 2753, 2761, 61 L.Ed.2d 521 (1979); *The Etna*, 138 F.2d 37 (3d Cir. 1943). In *Bloomer v. Liberty Mutual Insurance Co.*, 445 U.S. 74, 100 S.Ct. 925, 63 L.Ed.2d 215 (1980), the Supreme Court held that a stevedore is not required to bear *pro rata* the costs of a longshoreman's third-party

action even though it obtains the full amount of its lien from the longshoreman's recovery. It is this holding which prompted plaintiff's declaratory judgment action in the instant case. He contends that the practical effect of *Bloomer* has been to encourage stevedores and their insurance carriers[4] to make an injured longshoreman bear all costs and risks of third-party litigation and then recoup their lien interests "off the top" of any recovery. In plaintiff's words, this "has had the regrettable consequence of substantially interfering with the settlement process in third party litigation" because the lienholder, who need bear none of the expense or risk of pursuing the claim, often insists that a case be tried when it is in the best interests of the longshoreman to settle. *See Plaintiff's Memorandum of Law* at 10.

■ However true this assertion may be, it does not support plaintiff's contention that Northern and Midland are real parties in interest under Fed.R.Civ.P. 17, nor can it warrant the use of a procedural mechanism to circumvent the express provisions of the LHWCA. Rule 17 provides that "[e]very action shall be prosecuted in the name of the real party in interest." The import of this requirement simply "is that the action must be brought by the person who, according to the governing substantive law, is entitled to enforce the right. Thus, the action will not necessarily be brought in the name of the person who ultimately will benefit from the recovery." 6 C. Wright and A. Miller, Federal Practice and Procedure § 1543, at 643–44 (1971) (footnotes omitted). *See also Proctor v. Gissendaner*, 579 F.2d 876, 880 (5th Cir. 1978). The re-

---

within six months of the compensation award. Act of August 18, 1959, Pub.L.86–171, 73 Stat. 391, codified at 33 U.S.C. § 933(a) and (b).

**3.** It bears emphasizing that the stevedore's lien is not expressly recognized in the act. It is, rather, a judicially created right based in large measure upon the equitable principle that the longshoreman is not entitled to a double recovery for his injuries. *See The Etna, supra; Fontana v. Pennsylvania R. Co.*, 106 F.Supp. 461, 463 (S.D.N.Y.1952), *aff'd sub. nom., Fontana v. Grace Line, Inc.*, 205 F.2d 151 (2d Cir.) (*per curiam*), *cert. denied*, 346 U.S. 886, 74 S.Ct.

137, 98 L.Ed. 390 (1953). There is no question, however, that Congress was aware of the stevedore's lien rights when it amended the act in 1959 and elected not to disturb this rule. *Bloomer v. Liberty Mutual Insurance Co.*, 445 U.S. 74, 81–82, 100 S.Ct. 925, 929–30, 63 L.Ed.2d 215 (1980).

**4.** Under 33 U.S.C. § 933(h), when an insurance carrier has made compensation payments, it is subrogated to all of the insured stevedore's rights under 33 U.S.C. § 933.

spective rights of plaintiff, Northern, and Midland are set forth in 33 U.S.C. § 933 with subsection (b) playing "a central role in this comprehensive legislative scheme." *Rodriguez v. Compass Shipping Co., Ltd., supra,* 451 U.S. at 602, 101 S.Ct. at 1950. Under this provision, where the longshoreman's right of action against a third party has not been statutorily assigned to the stevedore, the longshoreman retains exclusive control of the litigation and is entitled to keep any recovery in excess of the stevedore's compensation lien and his own litigation costs. By contrast, where the statutory assignment has occurred, the stevedore obtains complete control of the third-party action with the longshoreman entitled to 80 percent of the excess recovery over the stevedore's compensation payments and costs. Thus, the dispositive consideration in determining who is entitled to pursue a

third-party action under section 33(b) is whether there has been a statutory assignment of the right of action.

 Here, there has been no such assignment.[5] The right to commence and maintain this action belongs exclusively to plaintiff. While Northern and Midland will share in any recovery, they are not pursuing a substantive claim for relief against Companhia.[6] Rather, their interest in this litigation is limited to the assertion of a judicially created lien against any recovery by the plaintiff. Hence, plaintiff and his employer "are not merely different parties with the same claim. They are different parties with different claims." *Del Re v. Prudential Lines, Inc.,* 669 F.2d 93, 97 (2d Cir. 1982), *petition for cert. filed,* 50 U.S. L.W. 3998.20 (U.S. June 3, 1982) (No. 81–2315). Under the governing substantive

**5.** Indeed, there has never been "an award in a compensation order filed by the deputy commissioner or [the Benefits Review Board]" as contemplated by 33 U.S.C. § 933(b). Northern and Midland represent in their brief that plaintiff received medical expenses and temporary total disability benefits from July 17, 1980, to August 27, 1980. This suit was not instituted until March 23, 1981, approximately seven months after compensation payments were terminated. The parties appear to have assumed that absent a formal compensation order, there could have been no statutory assignment and, accordingly, no one has questioned the timeliness of plaintiff's action. I note that this construction of the act generally is supported by existing caselaw. *See Klitznsky v. Pakistan Shipping Corp.,* 530 F.Supp. 326 (E.D.Pa.1981); *Collier v. John Mendis, Inc.,* 526 F.Supp. 459 (D.D.C.1981); *Fearson v. Johns-Manville Sales Corp.,* 525 F.Supp. 671, 674–75 (D.D.C.1981); *Dunbar v. Retla Steamship Co.,* 484 F.Supp. 1308 (E.D.Pa.1980). *Compare however, Simmons v. Sea-Land Services, Inc.,* 676 F.2d 106 (4th Cir. 1982); *Liberty Mutual Insurance Co. v. Ameta & Co.,* 564 F.2d 1097 (4th Cir. 1977) (acceptance of compensation payments without a formal award may trigger statutory assignment); *Verderame v. Torm Lines,* 670 F.2d 5 (2d Cir. 1982) (time limitation begins to run when amount of benefits to be received are fixed by order, stipulation or informal award).

**6.** I recognize that in *Federal Marine Terminals, Inc. v. Burnside Shipping Co.,* 394 U.S. 404, 89 S.Ct. 1144, 22 L.Ed.2d 371 (1969), the Supreme Court held that, under the peculiar facts of that case, a stevedore could maintain a common law action against a shipowner to recover its com-

pensation payments independent of its assertion of a compensation lien in a third-party action brought by the longshoreman's estate. However, *Burnside* should not be read so broadly as to sanction the existence of an independent right of action by the stevedore apart from those remedies contemplated by the act. As Judge Gurfein aptly pointed out in *Landon v. Lief Hoegh and Co., Inc.,* 521 F.2d 756 (2d Cir. 1975), *cert. denied,* 423 U.S. 1053, 96 S.Ct. 783, 46 L.Ed.2d 642 (1976), the stevedore's claim in *Burnside* was based "not on the shipowner's wrong to the *longshoreman,* but on its 'independent wrong' to the *stevedore* in failing to provide a safe place to work which had caused the *stevedore* damage." *Id.* at 760 (emphasis in original). Moreover, the stevedore was precluded from recouping the full amount of its $70,000.00 compensation lien in the suit brought by the longshoreman's estate because of an Illinois law which limited recovery in a wrongful death action to $30,000.00. Absent such extenuating circumstances, I agree with the Second Circuit's determination that prior to the occurrence of a statutory assignment, the stevedore does not possess a direct cause of action against the shipowner. *Landon, supra. See also Evans v. Transportacion Maritime Mexicana SS "Campeche,"* 639 F.2d 848, 861–63 (2d Cir. 1981).

However, even assuming that Northern and Midland could proceed directly against Companhia without the benefit of a statutory assignment, they have not done so. The fact remains that they are simply asserting a lien against plaintiff's recovery and not a cause of action in their own right against the shipowner.

law, Northern and Midland cannot properly be deemed real parties in interest in plaintiff's negligence action against Companhia.

This holding finds direct support in *Joyner v. F & B Enterprises, Inc.*, 448 F.2d 1185 (D.C.Cir.1971). In *Joyner*, the plaintiff received workmen's compensation benefits from the American Motorists Insurance Company ("American") without benefit of a formal compensation award. He subsequently sued a third party which filed a motion to join American as a named plaintiff under Rule 17. In affirming the trial court's denial of the motion, the Court of Appeals emphasized that plaintiff and American were asserting different legal interests:

> There can be no doubt then under 33 U.S.C. § 933(b) and the cases interpreting it that American's only rights in the circumstances of the present case run against Joyner and any recovery he may obtain in his third-party action. Only if American had obtained a formal award of benefits, and Joyner had not commenced a third-party action within six months of the entry of the award, would American have a substantive right directly against the third-party tortfeasor. This being the case, American is not a "real party in interest" in Joyner's suit against the third-party tortfeasor.

*Id.* at 1187–88.[7] *See also Del Re v. Prudential Lines, Inc., supra* (after statutory assignment, right of action against shipowner belongs exclusively to stevedore and it therefore may not ratify longshoreman's suit under Fed.R.Civ.P. 17); *Evans v. Transportacion Maritime Mexicana SS "Campeche"*, 639 F.2d 848, 861–63 (2d Cir. 1981) (Longshoreman's judgment against shipowner may not be reduced by amount of stevedore's compensation lien on basis that stevedore is real party in interest to the extent of its lien); *Landon v. Lief Hoegh and Co., Inc., supra* (stevedore is not an indispensible party under Fed.R.Civ.P. 19 by virtue of compensation lien). These de-

cisions merely confirm what the structure of the act makes clear—Northern and Midland do not assert a substantive claim for relief against Companhia and they therefore cannot be joined as involuntary plaintiffs in the negligence claim against the shipowner.

■ Plaintiff's request must be denied for the additional reason that it constitutes a thinly veiled attempt to circumvent the LHWCA's elaborate structuring of the rights of longshoremen, stevedores, and shipowners. "[Section 33(b)'s] six-month rule represents a balancing of interests. Various provisions of the Act, while apparently unrelated, represent legislative trade-offs between the interests of these three concerned parties." *Del Re v. Prudential Lines, Inc., supra*, 669 F.2d at 95. One of the linchpins of the act's compensation scheme is the exclusiveness of the stevedore's liability for compensation payments to the longshoreman. Thus, the 1972 amendments eliminated the third-party indemnity action by a shipowner against the stevedore recognized in *Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp.*, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956), by providing that "the employer shall not be liable to the vessel for such damages directly or indirectly . . . ." 33 U.S.C. § 905(b). As Judge Huyett pointed out for a three judge panel in *Lucas v. "Brinknes" Schiffahrts Ges.*, 379 F.Supp. 759 (E.D.Pa. 1974), *cert. denied*, 423 U.S. 866, 96 S.Ct. 127, 46 L.Ed.2d 95 (1975), the stevedore's insulation from all liability in third party negligence actions is an integral part of the functioning of the act:

> While leaving to future development the nature of the negligence action against the vessel, we consider it clear that with respect to the stevedore the sole liability was that provided under the Act. Congress sought to eliminate all actions against the stevedore whether for indemnity or contribution, whether based

7. In *Louviere v. Shell Oil Co.*, 509 F.2d 278 (5th Cir. 1975), *cert. denied*, 423 U.S. 1078, 96 S.Ct. 867, 47 L.Ed.2d 90 (1976), the Court rejected the holding in *Joyner* as inconsistent with *Burnside, supra*. Because I do not read *Burnside* so broadly, *see* Note 6, *supra*, I cannot agree that that decision undermines the validity of *Joyner*.

on tort or on contract, and whether for fees and expenses. Allowance of any such actions, even a *pro tanto* recovery to the extent of payments made by the employer under the Act, would create the circuitous type action Congress considered was too costly and disruptive of the compensation scheme, to be permitted.

*Id.* at 769. *See also Edmonds v. Compagnie Generale Transatlantique, supra.* (judgment in favor of longshoreman against shipowner may not be reduced in proportion to stevedore's negligence). The court's decision in *Bloomer* is premised upon this recognition.

It is abundantly clear that the declaratory relief sought by plaintiff is directed solely toward circumventing this fundamental principle. It would, by necessary implication, require Northern and Midland to pursue a discrete or even separate action to recover their compensation payments directly from Companhia when, under section 33(b), no such right of action exists. Even if such a right of action existed, they would be required to incur litigation costs in recouping their liens in direct contravention of *Bloomer.* Finally, such an action would raise the specter of a reduction in judgment for their own negligence, a result consistently rejected by the Courts. *See Evans v. Transportacion Maritime Mexicana SS "Campeche", supra,* 631 F.2d at 861–63. I cannot permit the plaintiff to use a procedural device to achieve such untenable results.

For all of the foregoing reasons, defendants' motion to dismiss Count II of plaintiff's complaint will be granted.